2001 ME 177

**STATE of Maine**

v.

**Ricky MILLAY.**

Supreme Judicial Court of Maine.

Argued: Nov. 6, 2001.
Decided: Dec. 26, 2001.

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Atty. (orally), Bangor, G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Attorney General, Augusta, for State.

Stephen C. Smith (orally), Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Ricky Millay appeals from the judgment entered in the Superior Court (Penobscot County, *Mills, J.*) following a jury verdict finding him guilty of operating under the influence (Class C), 29–A M.R.S.A. § 2411 (1996 & Supp.2001). Millay argues that the court erred in admitting his statement to a police officer in which he refused to take field sobriety tests. We affirm.

## I. FACTS AND PROCEDURE

[¶ 2] Early on a Sunday morning in May 1999, Millay tried to buy a bottle of wine at a convenience store in Old Town. The clerk refused to sell him the wine because it was before the legal time for selling liquor on a Sunday and because the clerk thought he was intoxicated. The clerk noticed that Millay's speech was slurred and his eyes were glassy. The clerk saw Millay drive away from the store in a blue wrecker and saw him back over a sign in the process.

[¶ 3] Officer Bryant of the Orono Police Department was notified by his dispatcher to watch for a blue wrecker being operated by an intoxicated driver. Bryant located a blue wrecker parked near a store. Bryant then watched the blue wrecker leave the parking lot and turn into the driveway of a residence without signaling the turn. Bryant, who noticed that the wrecker did not have a front license plate, turned on the blue lights of his cruiser and pulled behind the wrecker.

[¶ 4] Bryant talked to Millay, who was the operator of the wrecker, and observed that Millay's eyes were bloodshot and glassy and that his speech was slurred. Bryant smelled the odor of intoxicating liquor coming from Millay's mouth. In response to a question from Bryant, Millay said he had been drinking the previous night. Bryant asked Millay to perform field sobriety tests, and Millay said, "No, I have been through this before." In the meantime, Travis Roy, an Old Town police officer, arrived, and he saw that Millay was unsteady on his feet. Roy heard Millay's statement to Bryant refusing to take the field sobriety tests.

[¶ 5] Millay was indicted for operating under the influence. The indictment alleged that he had three prior convictions for operating under the influence. Millay filed a motion to suppress all evidence resulting from his detention and arrest on the grounds that he was detained without reasonable articulable suspicion and arrested without probable cause. Following a suppression hearing at which the two police officers testified, Millay's motion was denied. Prior to the commencement

of the trial, the parties stipulated that if the jury found that Millay operated while under the influence, Millay would admit to his prior record of OUI convictions. The jury was not informed of that portion of the indictment charging Millay with the three previous convictions.

[¶ 6] At trial, the convenience store clerk and the two police officers testified. Millay and a friend of his testified, also. The jury found Millay guilty of operating under the influence.[1]

## II. DISCUSSION

[¶ 7] Millay's appeal concerns only the admissibility of his statement, "No, I have been through this before." Bryant testified to Millay's statement at trial when the prosecutor asked him what Millay said when Bryant requested Millay to perform field sobriety tests. Millay objected to the prosecutor's question. Specifically, at sidebar, Millay's counsel said: "I think that it's more prejudicial than probative. [Bryant] can testify that [Millay] declined to take the test, but not that he's been through it before." The court overruled the objection.

[¶ 8] Millay argues three grounds for holding that the court erred in admitting the statement. We discuss first whether the court exceeded its discretion in admitting the statement over Millay's objection that it was more prejudicial than probative, an obvious reference to M.R. Evid. 403. Second, we consider his claim that the admission of the statement violates M.R. Evid. 404(b) because it is evidence of

other crimes offered to show that Millay acted in conformity with the other crimes. Third, we review whether the admission of his statement violated his privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution and article I, section 6 of the Maine Constitution.

### A. Rule 403

[¶ 9] The only basis Millay gave for objecting to the admissibility of his statement was Rule 403.[2] We review the court's ruling for abuse of discretion. *State v. Pierce*, 2001 ME 14, ¶ 28, 770 A.2d 630, 637.

[¶ 10] Millay's objection pursuant to Rule 403 was not to the evidence of the fact that he refused to take the field sobriety tests. His Rule 403 objection was only to his statement that he had "been through this before." The statement was relevant in that it was probative of his guilt. It indicated that he did not want to take the field sobriety tests because he knew enough about them to know that he could not pass the tests at that time. The evidence was prejudicial, but the issue is whether it would have a tendency to move the jury to decide the case on an improper basis. *Pierce*, 2001 ME 14, ¶ 28, 770 A.2d at 637. It would be improper for the jury to decide that because Millay is a person who has been stopped previously for OUI, it is more likely that he drove under the influence on this occasion.

[¶ 11] In our Rule 403 decisions, we have emphasized the wide discretion granted to

---

1. The court sentenced Millay to five years incarceration, suspending all but three years, and placed him on probation with numerous conditions for a period of four years. At sentencing the State presented Millay's driving record which showed that he had been previously convicted six times for OUI.

2. M.R. Evid. 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

trial courts to determine whether the value of the proffered evidence is substantially outweighed by the danger of unfair prejudice. *State v. Ifill,* 574 A.2d 889, 891 (Me.1990). In *State v. Ifill,* we upheld the admission of the defendant's written statement that he was refusing a blood-alcohol test because he was on federal parole. We indicated that *Ifill* was a case in which another judge might have ruled differently from the trial judge, but neither judge would have exceeded the court's discretion. *See id.; see also State v. Hayes,* 675 A.2d 106, 109–10 (Me.1996) (upholding admissibility, over Rule 403 objection, of defendant's statement during OUI arrest that he could tell the officer where two kilos of cocaine were located). Because of the broad discretion granted to trial courts, we cannot conclude, as a matter of law, looking at the evidence as a whole, that the probative value of Millay's statement was substantially outweighed by the danger of unfair prejudice. As in *Ifill,* this is a case in which neither the admission nor the exclusion of Millay's statement on Rule 403 grounds would constitute an abuse of discretion.

## B. Rule 404(b)

■ [¶ 12] We review the admissibility of Millay's statement under Rule 404(b) for obvious error because Millay did not object to the evidence on this ground.[3] *See State v. Thomes,* 1997 ME 146, ¶ 7, 697 A.2d 1262, 1264. Rule 404(b) makes the evidence of bad acts inadmissible to show propensity to commit the charged offense, but bad acts are admissible to show intent, identity, opportunity, motive, and other similar purposes. *See State v. Turner,* 2001 ME 44, ¶ 5, 766 A.2d 1025, 1027.

[¶ 13] Millay's statement was not a direct admission that he had operated under the influence previously, but from it a fair inference could be drawn that he had knowledge of field sobriety tests. The statement was admissible for evidence of that knowledge, not for evidence that he had been detained previously for OUI. Considering this purpose, it was not obvious error to admit the statement.

## C. Self-incrimination

[¶ 14] The remaining basis that Millay asserts for the inadmissibility of his statement is also reviewed for obvious error because he failed to object on this ground. He alleges that his statement is protected by the United States and Maine Constitutions.

### 1. Fifth Amendment

■ [¶ 15] Evidence from a defendant that is nontestimonial is not within the privilege against self-incrimination, and neither the Fifth Amendment of the United States Constitution, nor article I, section 6 of the Maine Constitution, prohibits the use of nontestimonial evidence. *Pennsylvania v. Muniz,* 496 U.S. 582, 589, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990); *State v. McKechnie,* 1997 ME 40, ¶¶ 8, 9, 690 A.2d 976, 978–79. We have held that the admission into evidence of a defendant's performance on field sobriety tests did not violate the defendant's privilege against self-incrimination because the evidence was nontestimonial. *State v. Eastman,* 1997 ME 39, ¶ 10, 691 A.2d 179, 182–83; *McKechnie,* 1997 ME 40, ¶ 10, 690 A.2d at 979. It follows that because a defendant's performance on field sobriety tests is admissible as nontestimonial, the *fact* that the defendant refused or declined to par-

---

**3.** M.R. Evid. 404(b) provides:
   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith.

ticipate in such tests is likewise nontestimonial, and the admission into evidence of the *fact* of refusal does not violate the defendant's Fifth Amendment right. The fact that Millay refused to take the tests, although the refusal was manifested with the word "no," is admissible because it was nothing more than a refusal to provide nontestimonial evidence.

■ [¶ 16] Although the fact of refusal is admissible as nontestimonial, the remainder of Millay's statement, that he had been through it before, is testimonial. It is testimonial because it is a statement communicating "an express or implied assertion of fact or belief." *Muniz*, 496 U.S. at 597, 110 S.Ct. 2638. Although the statement, or this portion of it, is testimonial, its admission did not violate Millay's constitutional right because the statement was not compelled. Although the Fifth Amendment and article I, section 6 prohibit the admission into evidence of a criminal defendant's statement that is obtained by compulsion by the police, statements that are not compelled are admissible. There is no suggestion by Millay that his statement was the result of compulsion or otherwise involuntary. He was not under arrest; the usual indicia of an arrest were not present; there was no evidence of any circumstances that his will was overborne. Compulsion was not a factor in this case, and because Millay's statement was not compelled or involuntary, it is admissible.

■ [¶ 17] Millay argues, however, that even though his statement was not compelled, his statement is the same as a statement invoking the right to remain silent. If Millay had said unambiguously that he refused to speak or that he was exercising his right to remain silent, we would have to reach the issue of whether a pre-arrest invocation of the Fifth Amendment privilege prohibits his statement from being admitted into evidence. Whether a pre-arrest invocation of the right to remain silent is admissible in the State's case in chief is an issue undecided by the Supreme Court. The federal circuits are split on the question.[4] We need not venture into this thorny issue because we hold that Millay's statement is not an invocation of his Fifth Amendment privilege. Millay was not asserting his right to remain silent. He did not refuse to talk; he did not say anything about his right to remain silent. He only stated his unwillingness to take the field sobriety tests and gave his reason for refusing to take the tests. His statement that he had "been through this before" was not the equivalent of invoking his right to remain silent.

### 2. Maine Constitution

[¶ 18] Millay argues that because the wording of article I, section 6 of the Maine Constitution differs from the wording of the Fifth Amendment, we are not bound by case law construing the Fifth Amendment. The relevant portion of article I, section 6 provides that the accused in a criminal prosecution "shall not be compelled to furnish or give evidence against himself[.]" We have held that the state constitutional privilege against self-incrimi-

---

4. The Courts of Appeal for the First, Sixth, Seventh, and Tenth Circuits have held that pre-arrest silence cannot be commented on by the prosecution, while the Fifth, Ninth, and Eleventh Circuits have held the admission of evidence of pre-arrest silence does not violate a defendant's Fifth Amendment right. *Compare Coppola v. Powell*, 878 F.2d 1562, 1565–68 (1st Cir.1989), *Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir.2000), *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1018 (7th Cir.1987) and *United States v. Burson*, 952 F.2d 1196, 1200–01 (10th Cir.1991), *with United States v. Zanabria*, 74 F.3d 590, 593 (5th Cir.1996), *United States v. Oplinger*, 150 F.3d 1061, 1067 (9th Cir.1998), and *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir.1991).

nation provides more protection than its federal counterpart. *State v. Rees,* 2000 ME 55, ¶¶ 6–8, 748 A.2d 976, 978–79. However, we have consistently followed federal precedent as to the admissibility of nontestimonial evidence, and we have declined to extend the state constitutional privilege to nontestimonial evidence. *Id.* ¶ 9, 748 A.2d at 979; *Eastman,* 1997 ME 39, ¶ 10, 691 A.2d at 182–83. Because we conclude that Millay's refusal to take the sobriety tests is nontestimonial, the Maine Constitution does not prohibit its admission. Furthermore, as we stated above, compulsion was not a factor in this case, and therefore, the statement cannot be excluded on that basis.

[¶ 19] We are aware that the Supreme Judicial Court of Massachusetts, whose state constitutional provision against self-incrimination is similar to ours, has held that the admission of evidence of a refusal to submit to field sobriety tests violates the state constitution.[5] *Commonwealth v. McGrail,* 419 Mass. 774, 647 N.E.2d 712, 715 (1995). In that case, the officer asked the defendant to perform field sobriety tests and the defendant stated that "[he was] not going to do any tests." *Id.* at 714. The Massachusetts court, while adhering to the concept that nontestimonial and noncompelled evidence is admissible under the state constitution, held that the refusal was testimonial because it was equivalent to a statement by the defendant that he had so much to drink he knew or

suspected that he was unable to pass the tests.[6] *Id.*

[¶ 20] We are not persuaded by the reasoning of the Massachusetts court. We conclude that refusing a field sobriety test is not a testimonial act. While the act of refusing may be equivalent to a defendant's statement that he does not want to do the one-legged stand because he knows he is too drunk to keep his balance, it is no different than the defendant performing the one-legged stand and losing his balance. The latter action can easily be equated to a statement by the defendant of "I'm too drunk to keep my balance." If we are going to allow into evidence a description of a defendant's performance on field sobriety tests, as we have done in *State v. Eastman,* then we have to allow evidence of a refusal to take the tests. There is no logical distinction between the two. We acknowledge that the wording of our constitutional provision is closer to the Massachusetts language than the federal provision, but the language difference does not justify excluding evidence of a refusal to take field sobriety tests while admitting evidence of the results of such tests.

The entry is:

Judgment affirmed.

---

**5.** Article 12 of the Massachusetts Declaration of Rights states in pertinent part:

> No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself.

MA. CONST. pt. 1, art. 12.

**6.** The court further found the statement to have been compelled because the defendant

was under no obligation to take the tests, and because he was under no obligation it was "unsound" to allow evidence of a refusal. *McGrail,* 647 N.E.2d at 715. The court subsequently retracted its statement that a driver was under no obligation and held that a driver does not have the right to refuse to perform field sobriety tests. *Commonwealth v. Blais,* 428 Mass. 294, 701 N.E.2d 314, 318 n. 3 (1998).