**STATE of Maine**

**v.**

**Terri L. ROSSIGNOL.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 13, 1993.

Decided June 30, 1993.

R. Christopher Almy, Dist. Atty., Bangor, for the State.

Joseph M. Baldacci, Bangor, for defendant.

Before WATHEN, C.J., and GLASSMAN, COLLINS and RUDMAN, JJ.

GLASSMAN, Justice.

Terri Rossignol appeals from a judgment entered in the Superior Court (Penobscot County, *Smith, J.*), affirming the judgment of the District Court (Newport, *Mills, J.*), on her conditional plea of guilty pursuant to M.R.Crim.P. 11(a)(2) to the offense of operating a motor vehicle while under the influence of an intoxicating liquor (OUI), 29 M.R.S.A. § 1312–B (Pamph.1992). We agree with Rossignol's contention that the District Court erred in denying her motion to suppress evidence of her statements to police officer Richard K. Fowler, and accordingly, we vacate the judgment.

The record reflects the following: Just before three o'clock on the morning of November 10, 1991, the Piscataquis County Sheriff's Department received a call reporting that a car with its headlights off was parked in a driving lane on Route 15 in Charleston near the correctional facility. Officers of the Dover Police Department arrived at the scene first and were followed after an interval of approximately 15 minutes by Richard K. Fowler, a state trooper. Fowler led Rossignol, who appeared quite intoxicated, from the Dover cruiser into the front seat of his own cruiser. Once Rossignol was seated, Fowler asked her a first set of questions: "What is your name," "what is your address," and "whose vehicle were you found in?" Rossignol did not respond. Although Fowler repeated these

questions "numerous times" over the next 20 minutes, Rossignol refused to answer. Finally, Fowler offered Rossignol a cigarette if she would tell him her name. Rossignol complied. Fowler then read Rossignol her rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and asked Rossignol a second set of questions directly from a detailed OUI-suspect inquiry form provided by his department. These inquiries elicited an incriminating confession from Rossignol, who admitted, among other things, that she had driven the car to its position in the middle of Route 15 and that she had stopped it there because she was unable to drive. With Rossignol's consent, a blood alcohol content (BAC) test was administered by Fowler.

Following a hearing on Rossignol's motion to suppress the confession and the BAC test results, the District Court found: that at all times that Rossignol was inside Fowler's cruiser she was in custody; that Rossignol invoked her right to remain silent by not answering Fowler's first set of questions; that this first set of questions was administrative in nature, not an interrogation; that Rossignol's eventual waiver of her *Miranda* rights was valid; and that Rossignol failed to reinvoke her right to remain silent at any time during Fowler's second set of questions. The court denied Rossignol's motion. No further findings were requested by either party.

■ Rossignol challenges the trial court's determination that Fowler's first set of questions to her constituted an "administrative" questioning as opposed to a custodial interrogation. She contends that her confession elicited by Fowler's inquiries was obtained in contravention of the Fifth Amendment. A custodial interrogation consists of "words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *State v. Nixon,* 599 A.2d 66, 67 (Me.1991) (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980)). Administrative questions, not likely to elicit an incriminating

response, include those "routine booking question[s]" normally attending arrest which seek only "biographical data necessary to complete booking or pretrial services," such as "name, address, height, weight, eye color, date of birth, and current age...." *Pennsylvania v. Muniz,* 496 U.S. 582, 601, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528 (1990). The scope of the administrative question exception should be strictly construed. *United States v. Gotchis,* 803 F.2d 74, 79 (2d Cir.1986). "If ... the questions are reasonably likely to elicit an incriminating response in a particular situation, the [administrative question] exception does not apply." *United States v. Mata–Abundiz,* 717 F.2d 1277, 1280 (9th Cir.1983). *See also United States v. Disla,* 805 F.2d 1340, 1347 (9th Cir.1986) (the customarily administrative question about the defendant's address constituted a custodial interrogation because it elicited information "related to an element (possession) of the crime" of which the defendant was suspected). Consequently, questions colorably administrative in nature may constitute a custodial interrogation if they are objectively likely to elicit an incriminating response.

■ Here, Fowler's first set of questions include an inquiry into the possession or ownership of the vehicle that had been found in the middle of the road. This question was reasonably likely to elicit a response from Rossignol material to the proof of her operation of that vehicle, an element of the offense of which Rossignol was a suspect. Accordingly, we conclude that Fowler's first set of questions do not fall within the administrative question exception and his questioning of Rossignol was a custodial interrogation without advising her of her *Miranda* rights.

■ The District Court found that Rossignol invoked her Fifth Amendment right to remain silent by not answering Fowler's first set of questions. "If the individual indicates in any manner, at anytime prior to or during [a custodial interrogation], that he wishes to remain silent, the interrogation must cease." *Miranda,* 384 U.S. at 473–74, 86 S.Ct. at 1627 (quoted in *State v.*

*Lavoie,* 562 A.2d 146, 147–48 (Me.1989)). Statements made by a defendant in custody after he has invoked his Fifth Amendment right to remain silent are admissible only if that right has been "scrupulously honored" by the state. *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326–27, 46 L.Ed.2d 313 (1975).

 In determining whether the state has scrupulously honored a defendant's right to remain silent, we consider the following factors: 1) whether the police immediately cease the interrogation on the invocation of that right; 2) whether the police resume questioning only after the passage of a significant period of time and provide fresh *Miranda* warnings; and 3) whether the later interrogation is restricted to matters distinct from the former. *Jackson v. Wyrick,* 730 F.2d 1177, 1179 (8th Cir.1984) (elucidating the test established in *Mosley,* 423 U.S. at 104–07, 96 S.Ct. at 326–28). We conclude in the case before us that Fowler did not scrupulously honor Rossignol's invocation of her right to remain silent: there was no cessation of his interrogation of Rossignol, no time was allowed to pass between her invocation of that right and further questioning, and the focus of Fowler's inquiries did not shift away from his suspicion that Rossignol had violated section 1312–B. Accordingly, we vacate the District Court's order denying Rossignol's motion to suppress from evidence the statements given by her to Fowler.

 Contrary to Rossignol's contention, on this record we find no clear error in the District Court's denial of Rossignol's motion to suppress from evidence the results of the blood alcohol test administered to Rossignol. The record discloses that when Fowler arrived at the scene the Dover officers advised him there had been no automobile parked in the roadway when one of them had patrolled the area approximately 15 minutes previously and that the car which Fowler saw in the middle of Route 15 with its lights off had been at the location less than 15 minutes. Rossignol was in the rear seat of the Dover cruiser. When Fowler opened the back door of the Dover cruiser, he immediately detected a strong odor of alcohol emanating from Rossignol. This information provided Fowler with sufficient probable cause to believe that Rossignol had operated the car while under the influence of intoxicating liquor and to request that Rossignol take a BAC test, to which she consented. *See* 29 M.R.S.A. § 1312 (Pamph.1992). *See also State v. Bento,* 600 A.2d 1094, 1096 (Me. 1991) (trial court's finding that probable cause exists reversed only if clearly erroneous).

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to enter an order vacating the judgment of the District Court and to remand to the District Court for further proceedings consistent with the opinion herein.

All concurring.