STATE OF MAINE

KENNEBEC, ss.

RECEIVED AND FILED SUPERIOR COURT
KENNEBEC SUPERIOR CR CRIMINAL ACTION
DOCKET NO. CR-07-371
2007 DEC 28 P 2: 54 DHM — KEN-10/24/2007

CLERK OF COURTS

STATE OF MAINE

v.

COREY SWIFT,

Defendant

**ORDER ON MOTION
TO SUPPRESS**

DONALD L. ...
LAW

FEB 15 2008

This matter is before the court on defendant's motion to suppress "any and all statements made by her (sic) to any and all law enforcement officers on the grounds that said statements were made without the benefit of a *Miranda* at a time when a *Miranda* warning should have given and was thus in violation of defendant's constitutional rights pursuant to the Fifth and Sixth Amendments of the United States Constitution as well as the relevant provisions of the Maine Constitution." Defendant further moves to suppress "any and all statements made by her (sic) on the grounds that said statements were involuntary."

On April 24, 2007, one Jean Paul Poulain was killed by a firearm. During the initial stages of the investigation, the law enforcement officers became aware of the possible involvement of a person named "Cody" or "Corey." Further investigation led a detective of the Augusta Police Department and a detective of the Maine State Police to an apartment at which were located three persons, Amanda Bechard, Corey Swift and his brother Mathiew. The Augusta Police detective asked Corey Swift to come out on a porch to talk but subsequently asked Swift to join him in his cruiser, ostensibly for privacy and because the defendant was slightly dressed and the temperature was cool. The interview was conducted at approximately 10:00 p.m.

After discussing a lot of personal information, the interview came to the point where the defendant denied leaving the apartment that evening except to go to the store. On being challenged, the defendant agreed that he was present at the location where the homicide took place and was, therefore, to the officer, an eyewitness. After further questions, the officer left his cruiser and went to a nearby cruiser where Amanda Bechard was being questioned by the Maine State Police detective. He advised the trooper detective that Mr. Swift had admitted to being an eyewitness and a joint interview continued in the Augusta Police cruiser by both detectives.

The entire episode was recorded and subsequently transcribed. According to the recording, both interviews lasted one hour, 11 minutes and 16 seconds. During this interview, the defendant discussed in significant detail the events leading up to the incident, the details of the incident and the defendant's role in the entire matter. At some point, deep in the joint interview, the defendant asked, "Am I going to have to go court for this?" The response by the officer was, "Well, I, there's a good chance. Um...," Subsequently, the detective suggested a need to retrieve the clothing worn by the parties that was up in the apartment nearby. At that point, the defendant asked, "Do you want my clothing?" The Maine State Police responded, "Just, just the stuff that you were wearing then." Mr. Swift then responded, "Well, I can go up and get that for you." In fact, at the end of the interview, the defendant did accompany the officers into the apartment and provided articles of clothing that were placed in evidence bags.

The defendant was then asked if he knew where the gun was and the defendant made a general description of the location. At that time, arrangements were made for Swift to accompany the officer to retrieve the gun. The officers were concerned that there was an unattended loaded pistol somewhere which represented a public safety issue. While leaving the apartment, Amanda Bechard stated to Corey Swift, "Do you

know that you're not coming back?" The Maine State Police detective responded, "Well he's coming back. He's gonna go show me where the gun (unclear)." In fact, Mr. Swift did accompany the officers to show them the location of the gun and it was retrieved.

Up to this point, all of the discussion with Corey Swift related to the circumstances before the incident, the homicide itself and the activities subsequent to the shooting primarily of Mathiew Loisel, the alleged shooter. The defendant was fully cooperative and had every expectation that the officers had not made any conclusion to initiate charges against him. However, after retrieving the gun, the defendant found himself in the parking lot of Dunkin Donuts in the officer's cruiser. At 11:45 p.m., the Maine State Police detective conferred with his sergeant supervisor who instructed him to interview the defendant "on just what he did during the shooting not including what Mathiew Loisel did." The officer testified that he was further instructed to arrest the defendant at the conclusion of the interview. This interview, also, was recorded and transcribed and lasted seven minutes and 46 seconds. At an early point in the interview, the State Police detective said:

> Okay. All right. Well, this is the deal. You saw me talking to . . . to my supervisors up there. Um… What's gonna have to happen tonight is we're gonna have to take . . . take you down to the jail. Okay?
>
> Mr. Swift: Me?
>
> Detective: Yep.
>
> Defendant: For what?
>
> Detective: Yep, you're gonna be booked for a felony murder and I'll explain it to you.
>
> Defendant: Audible sigh. How am I getting charged with it?
>
> Detective: Because you were part of it. You . . . I know you weren't . . .

This reaction by the defendant was a spontaneous expression of surprise and a clear indication that he did not believe he was in custody but was an eyewitness to the entire transaction. However, the officers had the intention of arresting the defendant after the interview, the interview was focused on the activities of the defendant, not the shooter, he was clearly in custody regardless of the defendant's subjective belief and the interview by all indications was a violation of the Fifth Amendment rights of the defendant and a violation of the *Miranda* doctrine.

A subsequent interview took place at the Kennebec County Correctional Facility on April 25th. This, too, was recorded and lasted 27 minutes and 2 seconds. At this interview, a clear *Miranda* warning and acknowledgement was exercised and not subject to suppression.

The standard by which this court determines whether the three interviews by the law enforcement officers should be suppressed for purposes of a trial are fully expressed in *State v. Michaud*, 1998 ME 251, 724 A.2d 1222. According to *Miranda v. Arizona*, 384 U.S. 436, the Court says:

> In order to safeguard an uncounseled criminal defendant's Fifth Amendment privilege against self-incrimination, law enforcement officers may not begin a custodial interrogation before warning the suspect "that he has a right to remain silent, that any statement he does make may be used against him, and that he has a right to the presence of an attorney, either retained or appointed.

Quoting further *Thompson v. Keohane*, 516 U.S. 99 (1995). The Court says:

> The United States Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcements after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

Therefore, a *Miranda* warning is necessary only if a defendant is: "(1) in custody; and (2) subject to interrogation." *State v. Swett*, 1998 ME 76, 709 A.2d 729.

The *Michaud* court goes on to explain that a defendant is "in custody" if subject to either: "(a) a formal arrest; or (b) a restraint on freedom of movement [to] the degree associated with a formal arrest." *Michaud*, 1998 ME 251, ¶ 4, 724 A.2d at 1226 (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)). "To determine whether the defendant was restrained to the degree associated with a formal arrest, a court must ascertain "whether a reasonable person in the defendant's position would have believed he was in police custody and constrained to a degree associated with formal arrest." In the "reasonable person" analysis of whether a defendant is "in custody", a court may examine a number of objective factors, including:

(1)　the locale where the defendant made the statements;

(2)　the party who initiated the contact;

(3)　the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);

(4)　subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(5)　subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(6)　the focus of the investigation (as a reasonable person in the defendant's position would perceive it);

(7)　whether the suspect was questioned in familiar surroundings;

(8)　the number of law enforcement officers present;

(9)　the degree of physical restraint placed upon the suspect; and

(10)　the duration and character of the interrogation.

*Michaud*, 1998 ME 251, ¶ 4, 724 A.2d 1222, 1226 (quoted in *State v. Dion*, 2007 ME 87, ¶ 23, 1928 A.2d 746, 750-51).

Having concluded that the second interview in the Dunkin Donuts parking lot was a violation of the defendant's Fifth Amendment rights and must be excluded and having concluded that the interview at the Kennebec County Correctional Facility was preceded by a proper *Miranda* warning, the court must now conduct an analysis of the interview in the police cruiser outside of Amanda Bechard's apartment in light of the standards of *State v. Dion*.

The interview took place in a cruiser immediately outside the apartment where the defendant had spent the previous evening and where his girlfriend lived. He sat in the front seat and the officer left him alone in the cruiser when he went to confer with the other detective. The officers initiated the contact with Mr. Swift. The officers did not have probable cause to arrest him nor did they communicate such probable cause at any time during the interview. On more than one occasion, the officers manifested to the defendant a freedom of movement including leaving the cruiser, voluntarily going to the apartment to gather clothes, going to find the loaded weapon with instructions to the girlfriend that they would return. From views expressed to the defendant it is clear that a person in his position would not believe he was in custody. Further, as the court will express from the Dunkin Donuts parking lot interview, it is abundantly clear that the defendant did not believe he was in custody. The defendant inquired of the officers as to whether he would be involved and his surprise manifested in his reaction at being arrested clearly reveals that the defendant, as a reasonable person in his position, perceived as a fact that he was not in custody up until that point. The focus of the investigation outside the apartment as a reasonable person in the defendant's position would perceive it was clearly the activities of Mathiew Loisel. There is no reason to

believe that the defendant was not familiar with the surroundings where the interview took place as he spent considerable time in that location. There were a number of law enforcement officers present, possibly four or five, but Mr. Swift was only involved with the two detectives. There was no physical restraint placed upon Mr. Swift at any time during these activities and the court does not find the duration and character of the interrogation to be consistent with a custodial interrogation until he was examined in the Dunkin Donuts parking lot.

The defendant argues the standards as found in a case subsequent in time to *Michaud*, *State v. Hassan*, 2007 ME 77, 925 A.2d 625. In that case, the Court states:

> In order for statements made prior to a *Miranda* warning to be admissible, the State must prove, by a preponderance of the evidence, that the statements were made while the person was not in custody, or was not subject to interrogation.

*Id.* at ¶ 13, 925 A.2d at 628 (quoting *State v. Bridges*, 2003 ME 103, ¶ 23, 829 A.2d 247, 254).

> The test of whether an individual was in custody is an objective, expressed as 'whether a reasonable person, standing in the defendant's shoes, would 'have felt he or she was not at liberty to terminate the interrogation and leave'.

*Bridges*, 2003 ME 103, ¶ 26, 829 A.2d at 254. Stated differently, the determination is "whether there was a 'restraint on freedom of movement' to the degree associated with formal arrest." *Id.* The court then goes on to list the criteria for consideration citing *Bridges*, the same standards as found in *Michaud*.

This is somewhat unusual because the court is not required to delve deeply into all of the circumstances to determine whether the defendant was in custody, although in doing so it concludes that during the first interviews he clearly was not in custody. The court does not have to follow that analysis because the very actions by the defendant himself when advised that he was under arrest so clearly manifested a

surprise that he was even being charged with a crime notwithstanding his earlier questions as to whether he would be charged and the detective stating that to be a possibility. Note, it was a possibility, not a conclusion.

Accordingly, the entry will be:

Defendant's motion to suppress statements made by the defendant in the interviews with Detective Jason Cote and Detective Dean Jackson in the driveway at 3 Gannett Street, Augusta, Maine, at approximately 10:00 p.m. on April 24, 2007, recording identification no. 0c07.2835005, is DENIED; defendant's motion to suppress statements of defendant of the interview in the Dunkin Donuts parking lot at approximately 11:45 p.m., on April 24, 2007, recording identification no. 0607.283502 is GRANTED; statements of the defendant in the interview of April 25, 2007, in the Kennebec County Correctional Facility, recording identification no. 0207.283501 is DENIED.


Dated: December ___2↲f___, 12007

Donald H. Marden
Justice, Superior Court

STATE OF MAINE
  vs
COREY R SWIFT
3 GANNETT STREET APT 4
AUGUSTA ME 04330

DOB: 08/10/1988
Attorney: JAMES BILLINGS
          LIPMAN & KATZ & MCKEE, PA
          227 WATER STREET
          PO BOX 1051
          AUGUSTA ME 04332-1051
          APPOINTED 07/13/2007

**DOCKET RECORD**

State's Attorney: FERNAND LAROCHELLE

Filing Document: CRIMINAL COMPLAINT                Major Case Type: HOMICIDE
Filing Date: 04/25/2007

## Charge(s)

1   **FELONY MURDER**                               **04/24/2007 AUGUSTA**
**Seq 622   17-A  202(1)**          **Class A**


2   **ROBBERY**                                     **04/24/2007 KENNEBEC**
**Seq 747   17-A  651(1)(D)**       **Class A  Charged with INDICTMENT on Supplem**


## Docket Events:

04/25/2007 FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 04/25/2007

04/25/2007 Charge(s): 1
         HEARING -  INITIAL APPEARANCE SCHEDULED FOR 04/25/2007 @ 3:00

         NOTICE TO PARTIES/COUNSEL
04/26/2007 Charge(s): 1
         HEARING -  INITIAL APPEARANCE HELD ON 04/25/2007
         DONALD H MARDEN , JUSTICE
         Attorney:  SHERRY TASH
         DA:  FERNAND LAROCHELLE        Reporter: CASE ENOCH
         Defendant Present in Court
04/26/2007 Charge(s): 1
         HEARING -  STATUS CONFERENCE SCHEDULED FOR 06/26/2007 @ 10:00

04/26/2007 Charge(s): 1
         PLEA -  NO ANSWER ENTERED BY DEFENDANT ON 04/25/2007

04/26/2007 BAIL BOND -  NO BAIL ALLOWED SET BY COURT ON 04/25/2007

04/26/2007 MOTION -  MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 04/25/2007

04/26/2007 MOTION -  MOTION FOR APPOINTMENT OF CNSL GRANTED ON 04/25/2007

         COPY TO PARTIES/COUNSEL
04/26/2007 Party(s): COREY R SWIFT

ATTORNEY - APPOINTED ORDERED ON 04/25/2007

Attorney: SHERRY TASH
04/26/2007 Charge(s): 1
HEARING - STATUS CONFERENCE NOTICE SENT ON 04/26/2007

04/30/2007 Charge(s): 1
MOTION - MOTION FOR WITHDRAWAL OF CNSL FILED BY COUNSEL ON 04/30/2007

Attorney: SHERRY TASH
05/03/2007 ORDER - SPECIAL ASSIGNMENT ENTERED ON 05/01/2007
DONALD H MARDEN , JUSTICE
05/03/2007 ORDER - COURT ORDER FILED ON 05/03/2007

SCHEDULING ORDER
05/04/2007 Charge(s): 1
MOTION - MOTION FOR WITHDRAWAL OF CNSL GRANTED ON 05/03/2007
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL
05/04/2007 Party(s): COREY R SWIFT
ATTORNEY - WITHDRAWN ORDERED ON 05/03/2007

Attorney: SHERRY TASH
05/04/2007 Party(s): COREY R SWIFT
ATTORNEY - APPOINTED ORDERED ON 05/03/2007

Attorney: STEPHEN BOURGET
05/04/2007 MOTION - MOTION FOR FUNDS FILED BY DEFENDANT ON 05/03/2007

05/07/2007 Charge(s): 1,2
SUPPLEMENTAL FILING - INDICTMENT FILED ON 05/04/2007

05/07/2007 Charge(s): 1,2
HEARING - ARRAIGNMENT SCHEDULED FOR 05/11/2007 @ 3:30

05/08/2007 OTHER FILING - NOTICE OF JOINDER FILED BY STATE ON 05/08/2007

WITH CR07-372
05/14/2007 Charge(s): 1,2
HEARING - ARRAIGNMENT HELD ON 05/11/2007 @ 3:30
DONALD H MARDEN , JUSTICE
Attorney: STEPHEN BOURGET
DA: FERNAND LAROCHELLE          Reporter: PEGGY STOCKFORD
Defendant Present in Court

READING WAIVED. DEFENDANT INFORMED OF CHARGES. COPY OF INDICTMENT/INFORMATION GIVEN TO
DEFENDANT. 21 DAYS TO FILE MOTIONS
05/14/2007 Charge(s): 1
PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 05/11/2007

05/14/2007 BAIL BOND - $50,000.00 CASH BAIL BOND SET BY COURT ON 05/11/2007

05/14/2007 BAIL BOND - $250,000.00 SURETY BAIL BOND SET BY COURT ON 05/11/2007

05/22/2007 Charge(s): 1,2
           PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 05/17/2007

05/22/2007 MOTION - MOTION FOR FUNDS GRANTED ON 05/14/2007
           DONALD H MARDEN , JUSTICE
           COPY TO PARTIES/COUNSEL
05/22/2007 Charge(s): 1
           HEARING - STATUS CONFERENCE NOT HELD ON 05/17/2007

07/12/2007 MOTION - MOTION FOR WITHDRAWAL OF CNSL FILED BY COUNSEL ON 07/10/2007

07/12/2007 MOTION - MOTION FOR WITHDRAWAL OF CNSL GRANTED ON 07/12/2007

           COPY TO PARTIES/COUNSEL
07/12/2007 MOTION - MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 07/12/2007

07/16/2007 MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 07/13/2007

           COPY TO PARTIES/COUNSEL
07/16/2007 Party(s): COREY R SWIFT
           ATTORNEY - WITHDRAWN ORDERED ON 07/13/2007

           Attorney: STEPHEN BOURGET
07/16/2007 Party(s): COREY R SWIFT
           ATTORNEY - APPOINTED ORDERED ON 07/13/2007

           Attorney: JAMES BILLINGS
07/25/2007 OTHER FILING - COUNSEL VOUCHER FILED ON 07/24/2007

           Attorney: SHERRY TASH
07/25/2007 OTHER FILING - COUNSEL VOUCHER APPROVED ON 07/25/2007

           $295.00 COUNSEL FEES                                    $5.65 EXPENSES
08/01/2007 MOTION - OTHER MOTION FILED BY DEFENDANT ON 07/27/2007

           MOTION TO AMEND SCHEDULING ORDER
08/01/2007 MOTION - MOTION FOR DISCOVERY FILED BY STATE ON 07/27/2007

08/07/2007 MOTION - MOTION FOR DISCOVERY GRANTED ON 08/07/2007

           COPY TO PARTIES/COUNSEL
08/07/2007 ORDER - COURT ORDER FILED ON 08/07/2007

           DISCOVERY ORDER
08/31/2007 MOTION - OTHER MOTION FILED BY DEFENDANT ON 08/31/2007

           MOTION TO AMEND SCHEDULING ORDER
09/06/2007 MOTION - OTHER MOTION GRANTED ON 09/04/2007

           MOTION TO AMEND SCHEDULING ORDER
09/18/2007 MOTION - OTHER MOTION GRANTED ON 09/17/2007

```
             MOTION TO AMEND SCHEDULING ORDER
09/25/2007 HEARING -  BAIL HEARING SCHEDULED FOR 09/27/2007 @ 8:30


             NOTICE TO PARTIES/COUNSEL
09/27/2007 HEARING -  BAIL HEARING CONTINUED ON 09/27/2007


09/27/2007 OTHER FILING -  WITNESS & EXHIBIT LIST FILED BY STATE ON 09/26/2007


09/27/2007 MOTION -  MOTION TO AMEND BAIL FILED BY DEFENDANT ON 09/27/2007


09/27/2007 HEARING -  MOTION TO AMEND BAIL SCHEDULED FOR 09/28/2007 @ 8:29


             NOTICE  TO PARTIES/COUNSEL
10/01/2007 HEARING -  MOTION TO AMEND BAIL HELD ON 09/28/2007
             DONALD H MARDEN , JUSTICE
             Attorney: JAMES BILLINGS
             DA:  FERNAND LAROCHELLE
10/01/2007 MOTION -  MOTION TO AMEND BAIL GRANTED ON 09/28/2007
             DONALD H MARDEN , JUSTICE
             COPY TO PARTIES/COUNSEL
10/01/2007 BAIL BOND - $250,000.00 SURETY BAIL BOND SET BY COURT ON 09/28/2007
             DONALD H MARDEN , JUSTICE
             OR $50,000 CASH
10/01/2007 BAIL BOND - $250,000.00 SURETY BAIL BOND FILED ON 10/01/2007
```

|                         |                                        |                     |
|-------------------------|----------------------------------------|---------------------|
| Bail Amt:  $250,000     | Surety Type: REAL ESTATE               | Surety Value:  $0   |
| County: KENNEBEC        | County Book ID: 9514 Book Page: 193    |                     |
| Date Bailed: 09/28/2007 | Prvdr Name: MARLENE SWIFT  BERNITA BOGWORTH |                |
| Lien Issued: 09/28/2007 | Rtrn Name:                             |                     |
| Lien Discharged:        |                                        |                     |

```
             BERNITA BOGWORTH'S LIEN WAS ISSUED OUT OF LINCOLN COUNTY, BOOK 3914, PAGE 222.
10/02/2007 OTHER FILING -  WITNESS LIST FILED BY DEFENDANT ON 10/01/2007


10/30/2007 Charge(s): 1,2
             MOTION -  MOTION TO SUPPRESS STATEMENT FILED BY DEFENDANT ON 10/30/2007


11/05/2007 MOTION -  MOTION TO TERMINATE BAIL FILED BY THIRD PRTY ON 11/05/2007


11/05/2007 MOTION -  MOTION TO TERMINATE BAIL GRANTED ON 11/05/2007


             COPY TO PARTIES/COUNSEL
11/05/2007 Charge(s): 1,2
             WARRANT -  ON COMP/INDICTMENT ORDERED ON 11/05/2007


11/05/2007 Charge(s): 1,2
             WARRANT -  ON COMP/INDICTMENT ISSUED ON 11/05/2007


             CERTIFIED COPY TO WARRANT REPOSITORY
11/06/2007 Charge(s): 1,2
             WARRANT -  ON COMP/INDICTMENT EXECUTED ON 11/05/2007


11/06/2007 Charge(s): 1,2
             WARRANT -  ON COMP/INDICTMENT RETURNED ON 11/06/2007
```

12/04/2007 HEARING -  MOTION TO SUPPRESS STATEMENT SCHEDULED FOR 12/20/2007 @ 1:00
           DONALD H MARDEN , JUSTICE
           NOTICE  TO PARTIES/COUNSEL
12/28/2007 HEARING -  MOTION TO SUPPRESS STATEMENT HELD ON 12/20/2007
           DONALD H MARDEN , JUSTICE
           Attorney:  JAMES BILLINGS
           DA:  FERNAND LAROCHELLE        Reporter: CASE ENOCH
           Defendant Present in Court
12/28/2007 Charge(s): 1,2
           MOTION -  MOTION TO SUPPRESS STATEMENT DENIED ON 12/28/2007
           DONALD H MARDEN , JUSTICE
           COPY TO PARTIES/COUNSEL                                       DENIED AS TO
           THE INTERVIEW ON APRIL 24, 2007 AT 10:00 IN THE DRIVEWAY AT 3 GANNETT STREET IN AUGUSTA
           AND THE INTERVIEW OF APRIL 25TH IN THE KCCF
12/28/2007 Charge(s): 1,2
           MOTION -  MOTION TO SUPPRESS STATEMENT GRANTED ON 12/28/2007
           DONALD H MARDEN , JUSTICE
           COPY TO PARTIES/COUNSEL                                       GRANTED AS TO
           THE INTERVIEW ON APRIL 24TH AT 11:45 IN THE DUNKIN DONUTS PARKING LOT

A TRUE COPY
ATTEST:    _____
                     Clerk