ENTERED NOV 0 7 2014

030121

STATE OF MAINE
CUMBERLAND, ss.
STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

STATE OF MAINE 2014 MAY 16 AM 8 50

UCD
DOCKET NO.
CUMCD-CR-13-8594
5/14/2014
JON-CWM-05-14-14

v.

ORDER ON DEFENDANT'S
MOTION TO SUPPRESS

MOSES KING,

Defendant

This matter was heard on the Defendant's Motion to Suppress on April 17, 2014. The Defendant was present along with his attorney David Bobrow, Esq. The State was present through Assistant District Attorney Angela Cannon.

After careful consideration of all the evidence, the Court indicated on the record that the portions of the Defendant's motions related to reasonable articulable suspicion to stop Mr. King's vehicle as well as the voluntariness of his confession were denied. The Court has indicated on the record that there was enough of a reasonable relationship between the initial description of the victim's assailant and his vehicle, as well as the certainty of the complaining witness regarding the identity of her attacker, and his vehicle, to allow there to be adequate articulable suspicion to stop and briefly detain Mr. King for questioning. *See State v. McDonald*, 2010 ME 102, ¶¶ 6-7, 6 A.3d 283.

On the issue of voluntariness, the Court concludes the State has proven that any statements made by Mr. King were voluntary by the requisite standard of proof beyond a reasonable doubt. *See State v. Sawyer*, 2001 ME 88, ¶ 8, 772 A.2d 1173 ("A confession is

admissible in evidence only if voluntary, and the State bears the burden of establishing voluntariness beyond a reasonable doubt.") This leaves the remaining portions of the Defendant's motion, which address whether or not custody occurred and if so at which point, and whether or not adequate *Miranda* warnings and waivers were executed before in-custody questioning.

In order for an in-custody individual's statements to be admissible against him as part of the State's direct case at trial, that individual must have been advised of his Miranda rights prior to making the statement. *State v. Bridges*, 2003 ME 103, ¶ 23, 829 A.2d 247. An individual is in custody for purposes of *Miranda* where "there was a 'restraint on freedom of movement' to the degree associated with formal arrest." *Id.* at ¶ 26. This determination is objective. *Id.* The court must consider a number of factors to determine, when taken as a whole, "whether a reasonable person, standing in the defendant's shoes, would 'have felt he or she was not at liberty to terminate the interrogation and leave.'" *Id.* Caselaw has outlined many factors that may be considered in making this determination:

> (1) the locale where the defendant made the statements;
> (2) the party who initiated the contact;
> (3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);
> (4) the subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;
> (5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;
> (6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);
> (7) whether the suspect was questioned in familiar surroundings;
> (8) the number of law enforcement officers present;
> (9) the degree of physical restraint placed upon the suspect; and
> (10) the duration and character of the interrogation.

*State v. Hassan*, 2007 ME 77, ¶ 14, 925 A.2d 625.

2

The Law Court has found that a person is generally not in custody for *Miranda* purposes during routine traffic stops. "An ordinary traffic stop to ask a few questions and to conduct field sobriety tests on a driver suspected of operating under the influence does not amount to custodial interrogation so as to require a warning of the driver's rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)." *State v. Lewry*, 550 A.2d 64, 65 (Me. 1988). The Law Court has found that even where the traffic stop is prolonged by a need to wait for another law enforcement officer to arrive, the delay alone does not require a conclusion that the defendant was in custody. *State v. Swett*, 1998 ME 76, ¶ 4, 709 A.2d 729.

The initial stop of Mr. King and his detention was in excess of 15 minutes. Mr. King's license and vehicle registration had been taken from him and had not been returned by the time Detective Sergeant Webster of the South Portland Police Department arrived and began to question Mr. King regarding the claim of assault. Once Detective Webster arrived at the scene, the questioning of Mr. King was accusatory and involved deception. As the Court noted on the record, police investigation of serious aggravated assault allegations, such as those made in this case, oftentimes requires this type of questioning as a legitimate police tactic. While this questioning tactic certainly is a legitimate exercise of the police investigatory power, the nature of this questioning significantly distinguishes the case at hand from the Law Court cases discussing whether roadside questioning in an operating under the influence stop rises to the level of custody for the purposes of Miranda. Unlike the facts in those cases, where most of the questioning is of an objective investigating fact-driven analysis, the questioning in this case is characterized by accusatory comments, which are intended to provoke a confession. This is a factor in deciding whether Defendant was in custody for purposes of Miranda. However, the tenor of the questioning is not

3

determinative of whether Defendant was in custody for Miranda purposes. The court views the circumstances in their totality. *Bridges*, 2003 ME 103, ¶ 26. While this roadside investigation was more aggressive than standard operating under the influence analyses, the Court cannot conclude that Mr. King was in custody for *Miranda* purposes until the time that he was actually placed in handcuffs.

It is also clear that once Mr. King was placed in handcuffs questioning continued, albeit briefly, without the administration of the *Miranda* warnings. The responses by Mr. King did not appear to be particularly incriminatory, but the fact that the process of questioning continued while he was handcuffed and under arrest without the administration of *Miranda* warnings, is a factor the Court can consider in determining whether or not there was an opportunity for a knowing and voluntary waiver of his *Miranda* rights. Sergeant Webster utilized a *Miranda* card and paraphrased the *Miranda* warnings to Mr. King. Mr. King indicated his assent and understanding of the warnings. While the warnings were not verbatim from the card, the Court concludes that adequate *Miranda* warnings were read to Mr. King.

While Mr. King acknowledged that he was aware of his *Miranda* rights, he did not explicitly indicate that he wished to waive them. Rather, once he indicated he understood the warnings, the questioning continued and it would appear that Mr. King continued to answer questions without a positive recursion of his *Miranda* rights. The court recognizes the significant case law that would suggest that an explicit waiver need not exist in every case, and that the waiver may be implied by the ongoing conduct of a Defendant in continuing to answer questions. However, in this case the Court concludes that the amount of time he was detained at the scene, followed by the initial interrogation, including interrogation while handcuffed, and not *Mirandized*, makes this court unable to conclude that a knowing and voluntary waiver of his *Miranda* rights

4

occurred in this circumstance simply by his continuing to answer questions without an affirmative explicit waiver of his rights. Accordingly, the Court concludes as follows:

1.    Any and all questions and answers up until the time that Mr. King was handcuffed, are legally obtained and may be utilized by the State for any purpose at trial and the motion to exclude is denied.

2.    Any statements made during the time that Mr. King was handcuffed and had not yet been *Mirandized* are excluded.

3.    Any statements made after Mr. King had been read his *Miranda* warnings, but did not explicitly waive his *Miranda* rights either verbally or in writing, are excluded.

The Defendant's Motion to Suppress is therefore granted in part and denied in part.   On the statements excluded above in paragraphs 2 and 3, these are excluded in the State's case in chief and whether or not they can be utilized in any other aspect of the trial rests within the discretion of the trial justice.

The clerk may incorporate as follows:   "Motion to Suppress granted in part/denied in part."

Dated:   May 14, 2014

_____
John H. O'Neil, Jr.
Justice, Superior Court

5